# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00416-CV

Dean Trahan, Appellant

v.

Texas Department of Protective and Regulatory Services, Appellee

FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. C2002-100A, HONORABLE JACK ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a jury trial, the trial court signed an order terminating appellant Dean Trahan's parental rights to his son, G.T. Trahan appeals, contending that the evidence is legally and factually insufficient to support the jury's findings. We affirm the order of the trial court.

## Factual Background

Trahan met Rachel Truelove at a Narcotics Anonymous meeting in late 1999; he was about thirty-three years' old and she was nineteen. G.T. was born to the couple on August 17, 2000, and at the time of trial in May 2003 was nearly three years' old. G.T. and his older half-brother B.T. were removed from Truelove's care and taken into Department custody on February 4, 2002, after Truelove's father called the Department to report that Truelove was abusing drugs and not caring

properly for G.T. At the time the Department took custody of the children, Trahan was visiting Truelove and the children several times a week, sometimes caring for the children and taking them to daycare. Truelove testified that at the time of trial, her father was caring for B.T. and she was living with them; she had lived there on and off in the past, but her father kicked her out whenever she relapsed into drug abuse. Truelove, who used heroin through the first half of her pregnancy with G.T., wanted G.T. to be adopted by a good family because she knew she could not care for him properly.

Trahan testified that for several years he had struggled with heroin addiction and alcohol abuse; Trahan also used cocaine. Trahan said that from February 2000 through July 2000, he used drugs, sometimes with Truelove, who was pregnant with G.T., and was arrested several times. Trahan was not present when G.T. was born and did not meet him until June 2001 because Trahan was in jail for theft by check from July 31 until December 8, 2000, and then went directly into a treatment program. For several months after his release from treatment on June 1, 2001, Trahan spent almost every day with G.T. except for four days in June when he was arrested for theft by check and two days in October when he was arrested for stealing a chainsaw; Trahan intended to pawn the chainsaw for money to buy heroin, which he and Truelove were using at the time. On December 11, 2001, Trahan checked himself into another treatment center and stayed there until late January 2002, when he was again arrested for theft. After his release on January 31, Trahan immediately went to see G.T. He was arrested again in April 2002 for probation violations, including using drugs and failing to pay required fees, and was last jailed from June 26 until early November 2002. Trahan said that in the several months before trial, he had seen G.T. more often than ever before and that his mother, his grandmother, and he had spent as much time with G.T. as

2

the Department would allow. Trahan and his family testified that G.T. has bonded with them and smiles and calls out for his daddy when he sees Trahan.

On February 14, 2002, following G.T.'s removal, the trial court signed an order requiring Trahan to take parenting classes, undergo counseling, a psychological evaluation, and a drug and alcohol assessment, and comply with the Department's service plan.[1] One month later, the Department prepared a service plan requiring Trahan to attend individual counseling with a therapist, undergo a psychological evaluation and a drug assessment, attend parenting classes and regular AA and NA meetings, submit to random drug testing, avoid using or being around drugs or alcohol, obtain and keep consistent employment and appropriate housing, and have two supervised visits with G.T. each month. In July and October 2002, the Department submitted status reports stating that Trahan was incarcerated and had not completed any of the court-ordered services. In February 2003, the Department reported that Trahan had been released from prison in November 2002 and that the trial court had informed the Department "that no further services needed to be provided to" Trahan. In March 2003, the trial court signed a report stating that Trahan had not demonstrated adequate and appropriate compliance with the service plan.

Trahan testified that since his most recent release from prison, he had gotten off drugs and was trying to find and maintain employment. About three weeks before trial, Trahan began taking a prescribed antidepressant. He is attending AA and NA meetings every day, has a sponsor,

---

[1] In September 2001, in a separate paternity proceeding, a trial court signed an agreed decree of paternity under which Trahan was named G.T.'s father and appointed joint managing conservator with Truelove. Trahan was ordered to pay Truelove $150 a month in child support, starting in November 2001, and to provide or pay for G.T.'s health insurance. Trahan testified that he had not made any of the court-ordered payments and owed Truelove almost $3,000.

3

and thinks that he can stay clean this time, but admitted that he has attended such meetings on and off for eleven or twelve years and frequently relapsed into drug abuse. In January 2003 Trahan completed a parenting class, and he recently completed a psychological evaluation. Trahan has a room in his grandmother's house and is trying to repair and make childproof a trailer he has on his grandmother's property. Trahan has not been able to find and maintain stable employment since being ordered to do so, in part because he was sometimes arrested and imprisoned. At the time of trial, Trahan had a job building decks. He was paid based on how many decks he built, not an hourly wage, and he did not have medical insurance. However, he testified that he had recently been assured of getting a job that would provide health insurance for G.T. and himself. In a recent month, Trahan earned about $500. He pays his grandmother $225 a month in rent, borrows a truck from his father, and pays about $60 a month for car insurance. Trahan has never made court-ordered child support payments, but he said that in the past, when he was earning $10 or $12 an hour, he gave Truelove money when she needed it.

As part of his probation conditions, Trahan was ordered to pay restitution and probation fees. He made several payments, but stopped because he could not afford it. In January 2003, Trahan tested positive for cocaine use. Trahan denied using drugs, but his probation officer testified that Trahan admitted using cocaine once in early January. The officer also said Trahan had missed several appointments and twice failed to submit a urine sample for drug testing. Trahan said he could be arrested for probation violations and testified that his family would help care for and support G.T. if Trahan is arrested.

Therapist Rodney Keller saw Trahan three times, the last visit being about a year before trial. Keller said that Trahan seemed to be honest, cooperative, and sincere in wanting to be

a better father and move past his addictions. However, as of their last session, Keller believed that Trahan's prognosis for getting and staying clean was poor and that Trahan was not able to care for himself and G.T. Dr. Dina Trevino performed a psychological evaluation on Trahan in February 2003, and testified that Trahan was open and cooperative and did not attempt to portray himself in an overly positive way; in fact, Trevino said Trahan seemed to paint himself in a more negative light than was warranted. Trevino said Trahan showed signs of depression and anxiety, has limited coping skills, feels like he is a victim in his own life, does not tolerate frustration well, is not driven to excel, and might not be a reliable employee. Trevino believes that the only way Trahan will be successful in his drug rehabilitation efforts is if he undergoes psychiatric treatment and drug treatment and she testified that she would hope to see two years of sobriety before she would be comfortable with a drug-addicted person caring for a child. Melba Romo, who coordinated Trahan's parenting class, testified that Trahan was very interested, wanted to learn, and sought out more information than was presented in class. However, Sherry Flume, a Department supervisor, testified that Trahan had not availed himself of most of the resources available through the Department.

**Standard of Review**

A trial court may terminate a parent-child relationship if it finds that the parent has engaged in conduct set out as statutory grounds for termination and that termination is in the child's best interest;[2] the Department must establish these elements by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001 (West 2002); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). Clear and convincing evidence is an intermediate standard of proof that falls between the criminal standard of

---

[2] Trahan does not challenge the jury's finding that termination is in G.T.'s best interest.

proof beyond a reasonable doubt and the general civil standard of the preponderance of the evidence and means the degree of proof "such that a fact-finder could reasonably form a firm belief . . . about the truth of the State's allegations" supporting termination. *C.H.*, 89 S.W.3d at 24-25. We review the legal sufficiency by considering all of the evidence in the light most favorable to the finding and determining "whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must maintain appropriate deference to the fact finder's role, assuming that it resolved evidentiary conflicts in favor of its finding when reasonable to do so. *Id.* We disregard evidence that a reasonable fact finder could have disbelieved. *Id.* We review factual sufficiency by viewing all of the evidence and determining whether a reasonable fact finder could have resolved disputed evidence in favor of its findings. *Id.* If, after such a review, the disputed evidence is such that a reasonable fact finder could not have formed a firm belief as to the truth of the State's allegations, we will hold the evidence to be factually insufficient. *Id.*; *C.H.*, 89 S.W.3d at 25.

**Discussion**

The State sought termination of Trahan's parent-child relationship on three alternative grounds, alleging that Trahan had: (1) knowingly placed or allowed G.T. to remain in conditions or surroundings that endangered his physical or emotional well-being; (2) engaged in conduct or knowingly placed G.T. with someone who engaged in conduct that endangered G.T.'s physical or emotional well-being; or (3) failed to comply with a court order establishing the necessary actions for Trahan to regain custody of G.T. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O). If the evidence is legally and factually sufficient to support a finding that any of those three grounds is true,

6

we will sustain the jury's verdict and the trial court's judgment of termination. *See In re M.C.M.*, 57 S.W.3d 27, 32 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

In February 2002, more than a year before trial, Trahan was ordered to undergo a drug assessment, obtain and maintain stable employment, take parenting classes, and undergo counseling and a psychological evaluation. Trahan was further ordered to comply with the Department's service plan, which, among other items, required him to avoid using or being around drugs or alcohol. Not until February 2003 did Trahan undergo the psychological examination, and he attended only three sessions of counseling, the last one a year before trial. Trahan completed a parenting class, but waited until January 2003 before doing so. It appears from the record that Trahan never completed the drug assessment, and, although he denied it, a drug test showed cocaine use and his probation officer testified that Trahan admitted to using cocaine in early January 2003. Trahan stated he had not been able to maintain stable employment because of repeated arrests and incarcerations. Under the clear and convincing standard, the evidence is legally and factually sufficient to support a finding that Trahan had violated provisions of the trial court's February 2002 order.

Further, Trahan was incarcerated for a significant portion of G.T.'s infancy. Although Trahan thought Truelove was a good mother when she was sober, he knew that she continued to use drugs after G.T.'s birth. Trahan used heroin with Truelove while she was pregnant with G.T. and after G.T. was born, and he was arrested in October 2001 for stealing a chainsaw to get money for heroin. Trahan allowed G.T. to remain with Truelove while she was abusing heroin and spent time with G.T. during the period he was abusing heroin himself. Truelove's own father was so concerned about the care Truelove was providing for G.T. that he was moved to call the Department and report her. Truelove testified that she did not believe she was able to care for G.T. properly. There was

7

testimony that at the time the Department took custody of G.T., he was functioning and developing at rates slower than normal; since his removal, he had caught up to his peers in development. In summary, Trahan used drugs while helping to care for G.T. and allowed G.T. to remain in the care of a heroin addict who repeatedly relapsed into addiction. We recognize that Trahan appears to be trying to get his life in order. However, for the first two and one-half years of G.T.'s three years of life, Trahan was in and out of G.T.'s life and in and out of drug treatment. Based on this record, the evidence is legally and factually sufficient to allow a rational trier of fact to form a firm conviction that Trahan knowingly placed or allowed G.T. to remain in endangering conditions or surroundings and engaged in endangering conduct or knowingly placed G.T. with people who engaged in such conduct.

Having held that the evidence is legally and factually sufficient to support the jury's finding in favor of termination, we overrule Trahan's issue on appeal. We affirm the trial court's order.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: April 22, 2004